IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICO LAMONT BIAS,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent*.

Crim. No. ELH-12-528
Related Civil No. ELH-15-221

**MEMORANDUM OPINION**

In February 2013, Rico Bias tendered guilty pleas to conspiracy to interfere with commerce by robbery ("Hobbs Act Robbery"), under 18 U.S.C. § 1951(a), and brandishing a firearm, in violation of 18 U.S.C. § 924(c) and § 2 (aiding and abetting). *See* ECF 63; ECF 67; ECF 68. He was sentenced on November 26, 2013, to a total term of incarceration of 185 months. *See* ECF 105; ECF 106. No appeal was taken.

Pursuant to 28 U.S.C. § 2255, Bias filed a Motion To Vacate, Set Aside, or Correct Sentence (the "Petiton") on January 26, 2015, alleging ineffective assistance of counsel. ECF 130; ECF 130-1. In response, the government filed a Motion to Dismiss the Petition as untimely. ECF 134. On April 2, 2015, I entered an Order granting Bias twenty-eight days to provide this Court with further information regarding his entitlement to equitable tolling of the one-year statute of limitations. ECF 136. Bias responded on April 27, 2014, under oath (ECF 139), and the government replied. ECF 142.

Thereafter, by Order of May 29, 2015 (ECF 143), I asked the government to provide the Court with a transcript of the guilty plea proceeding. In addition, I indicated that, notwithstanding the government's contention that the § 2255 Petition is untimely, "I intend to

consider the merits of the claim."    Accordingly, I allowed the government to submit a memorandum addressing the merits.  *Id.*  Bias filed a reply on June 25, 2015.  ECF 149.  On June 29, 2015, the government filed the response requested by the Court, with exhibits.  ECF 150.

No hearing is necessary to resolve the Petition.  *See* 28 U.S.C. § 2255(b).

## I.  FACTUAL BACKGROUND

Bias and two co-defendants were indicted on October 4, 2012.  ECF 22.  They were charged with various offenses relating to multiple armed robberies of convenience stores, including one on February 21, 2012, at which a customer was shot in the abdomen and seriously wounded.  ECF 22.  In particular, Bias was charged with conspiracy to obstruct commerce by robbery, between January 22, 2012, and June 11, 2012, in violation of 18 U.S.C. § 1951; robbery of a Wendy's Restaurant on June 11, 2012, in violation of 18 U.S.C. § 1951; conspiracy to possess firearms in furtherance of crimes of violence, *i.e.*, robbery, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2; brandishing and discharging of a firearm in furtherance of a crime of violence, *i.e.*, robbery, under 18 U.S.C. § 924(c) and 18 U.S.C. § 2; and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).[1]

On February 25, 2013, Bias entered guilty pleas to two counts: conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One), and brandishing a firearm in furtherance of a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Four).  *See* ECF 63; ECF 67; ECF 68.  The lengthy Statement of Facts appended to the Plea Agreement as Attachment A (ECF 67 at 10-20) outlined twenty-two armed robberies of convenience stores committed by Bias and his co-defendants during the period from

---

[1] A superseding indictment was filed as to co-defendant Hatratico Smith on March 28, 2013, containing forty-seven counts.  *See*  ECF 73.  Both co-defendants eventually pleaded guilty.  *See* ECF 62, ECF 64, ECF 65 (Monzell Lee); ECF 95, ECF 96, ECF 97 (Hatratico Smith).

January 2012 to June 2012.  The Statement of Facts further reflects that a firearm was brandished by Bias's co-defendant, Hatratico Smith, during the robberies.  Moreover, Smith discharged the weapon on two occasions.  *Id.* at 10.  In one incident, on February 21, 2012, Smith shot a customer at a Royal Farms store.  *Id.* at 13-14.  At the time, Bias was in the store and he subsequently drove the getaway car.  *Id.*

By statute, Count One carries a maximum sentence of 20 years' incarceration.  Count Four carries a maximum sentence of life imprisonment and a mandatory minimum term of seven years' imprisonment, consecutive to any other sentence.  Paragraph 11 of the Plea Agreement is titled "Waiver of Appeal."  Bias generally waived all of his appellate rights.  However, he reserved the right to appeal any sentence to the extent it exceeded the guideline range for incarceration for an offense level of 29, plus seven years.

Sentencing was held on November 26, 2013.  ECF 105.  Bias received a sentence of 101 months as to Count One and a consecutive term of 84 months as to Count Four, for a total, below guidelines sentence of 185 months' incarceration.  ECF 106; ECF 107.  Under Fed. R. App. P. 4(b)(1)(A), the time for filing an appeal expired on December 10, 2013.  As noted, Bias did not file an appeal.

Bias filed his Petition on January 26, 2015.  Before he did so, Bias sent correspondence to Chambers, including a letter received on March 18, 2014, docketed at ECF 118.  In ECF 118, Bias requested "a blank § 2255 application," as well as other materials, such as "full discovery," and stated:  "I intend to file ineffective assistance of counsel due to my previous attorney . . . had me plea out to a crime where the element . . . could not be proven."  *Id*.  Bias also requested a reduction in his sentence.  E-mail exchanges on March 19, 2014, between Court employees Megan Price and staff attorney Kim Berger, Esquire indicate that Ms. Berger was to mail a

§ 2255 packet to Bias and enter a staff note to that effect.  Despite the absence of a docket entry reflecting the mailing of the § 2255 packet, Bias never wrote to the Court to state that he did not receive the § 2255 form that he had requested.

Bias again wrote to the Court on May 7, 2014, which was received in Chambers on May 12, 2014.  *See* ECF 124-1.  In the letter, Bias requested a hearing on the brandishing charge under 18 U.S.C. 924(c), claiming that there was no evidence that he had physical possession of a firearm.  ECF 24-1.[2]  On the same date, I sent Bias's letter to the government and ordered the government to respond.  ECF 124; ECF 124-1.  The government promptly responded on May 13, 2015.  ECF 125.

In ECF 125, the government argued, *inter alia*, that this Court lacked jurisdiction to grant the relief sought as to the brandishing charge.  Bias replied in a submission docketed on June 23, 2014.  ECF 127.  He stated, among other things:  "I would like to claim ineffective assistance of counsel.  [My lawyer] and I constantly argue about my role in the various incidents.  I told him . . . that I was used by my co-defendant . . . If I went into any place of business it was as a patron. . . ."  *Id.*

On November 10, 2014, Bias filed a request with the Court Clerk to obtain a copy of his Court transcripts.  ECF 128.  One week later, on November 17, 2014, the Staff Attorney's Office wrote to Bias, directing him to contact the Court Reporter, and informing him that he would have to pay the transcription fee.  ECF 129.

On January 26, 2015, Bias filed his § 2255 Petition.  ECF 130; 132.

Additional facts are included in the Discussion.

---

[2] In his letter, Bias also asked if I had received his letter of December 9, 2013.  My file does not contain a letter with that date, but it does contain a letter received on May 21, 2013.

## II.  DISCUSSION

### A.  Equitable Tolling

Under the provisions of 28 U.S.C. § 2255(f), the limitations period for the filing of a petition under § 2255 runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Upon expiration of the time for filing a Notice of Appeal, Bias's conviction became final and the limitations period set forth at 28 U.S.C. § 2255(f) began to run.  *United States v. Clay*, 537 U.S. 522 (2003); *United States v. Wilson*, 256 F.3d 217, 221 (4th Cir. 2001).  Bias's time for filing a Notice of Appeal expired fourteen days after entry of the Judgment.  Fed. R. App. P. 4(b)(1)(A).  In this case, the Judgment was entered on November 26, 2013.  *See* ECF 106; ECF 107.  Therefore, the deadline for noting an appeal was December 10, 2013.  As a result, limitations expired on December 10, 2014.  However, Bias did not formally file his Petition until January 26, 2015, over a month after expiration of the limitations period.  ECF 130.  On this basis, Bias's Petition would be time barred, unless there is a ground for equitable tolling.[3]

---

[3] Bias does not contend that his submissions to the Court, docketed at ECF 118 and ECF 124-1, should be construed as a § 2255 petition and thus timely filed.  Indeed, in ECF 118 Bias specifically asked for a § 2255 form, making clear that he knew his letter was not a § 2255 petition.

Bias argues that he is entitled to equitable tolling of the § 2255 limitations period because he had difficulty acquiring his transcripts and because his prison transfers prevented the timely filing of his Petition. *See* ECF 139.

Bias attributes his delay in filing his Petition to a lack of resources in the federal prison system. *See* ECF 139. Bias states, ECF 139 at 3:

> Ultimately the Petitioner was transferred to his current Federal Correctional Institution in Talladega, by way of Oklahoma City, then to Atlanta for an additional 30 day lay over, before arriving at [Talladega] in July 2014. The Petitioner did everything humanly possible to obtain his sentencing and plea hearing transcripts, even by trying to get his family to help as well as his appointed counsel, but to no avail. Petitioner knowing that the transcripts are vital to the information that he seeks to prove in this action, is worthy of review. The Petitioner now seeks the legal aid of someone in the law library, but there is no legal aid program here at FCI Talladega, and all the jail house lawyers are trying to get funds from him that he never had in the beginning in order to help him with his legal affairs. With that being said, the Petitioner now requests this Honorable Court to grant this extraordinary circumstance, and allow the Petitioner to proceed in his pleadings for good cause. (Underline in original).

Equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (applying equitable tolling to one-year limitation period in 28 U.S.C. § 2255) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (additional citations omitted); *see Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2001); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *see also United States v. Oriakhi*, 394 Fed. App'x 976, 977 (4th Cir. 2010). The doctrine is meant to apply only where there are "extraordinary circusmtances." *Holland v. Florida*, 560 U.S. 631, 634 (2010).

For relief under a theory of equitable tolling, an otherwise time-barred petitioner must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). However, only "'reasonable diligence'" is required. *Holland*, 560 U.S. at 653 (citation omitted). There is no requirement for "maximum feasible diligence." (Citations and internal quotations omitted).

Ordinarily, a claim of ineffective assistance of counsel does not warrant equitable tolling. *See Holland*, 560 U.S. at 651-51; *Harris*, 209 F.3d at 328, 331 (denying equitable tolling where attorney conceded that he gave petitioner "erroneous" advice regarding the deadline for filing his habeas petition). Nor is a petitioner's lack of familiarity with the law considered an extraordinary circumstance warranting equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (applying 28 U.S.C. § 2255).

*Holland*, 560 U.S. 631, is instructive as to equitable tolling in the context of post-conviction matters. Holland was a death-row inmate who filed a § 2244 federal habeas petition five weeks after the limitations period had passed. *Id.* at 639. The limitations clock on Holland's § 2244 petition had been suspended while Holland's attorney pursued post-conviction relief in state court. *Id.* at 636. While the state-court petition was pending, communications between Holland and his attorney broke down entirely. *Id.* Nevertheless, Holland wrote letters reminding his attorney of the importance of timely filing his § 2244 petition upon resolution of his state-court petition. *Id.* at 637-38. Holland also performed legal research and provided his attorney with the relevant limitations dates and deadlines. *Id.* at 639. Increasingly distressed by his attorney's performance, Holland twice unsuccessfully asked the Supreme Court of Florida to appoint new counsel for him. *Id.* at 636-37. While in the prison library Holland discovered on his own that his state-court petition was unsuccessful in the Supreme Court of Florida, and that

the §2244 one-year limitations period had subsequently run.  He filed his own §2244 motion the very next day.  *Id.* at 639.

The Supreme Court observed that the District Court had "rested its ruling . . . on a lack of diligence – a ruling that respondent does not defend."  *Id.* at 653.  It concluded that the District Court was "incorrect."  *Id.*  It determined that Holland diligently pursued his rights by writing letters to the lower court and to his unresponsive attorney, and by immediately filing his own motion when he became aware of the disposition of his case.  *Id.* at 653.  Nevertheless, the Court remanded for a determination of whether the facts of the case "constitute[d] extraordinary circumstances sufficient to warrant equitable relief."  *Id.* at 653-54.

Bias claims that difficulties in acquiring his transcripts entitle him to equitable tolling. ECF 139 at 3 ("Petitioner did everything humanly possible to obtain his sentencing and plea hearing transcripts, even by trying to get his family to help as well as his appointed counsel, but to no avail.").  However, in *United States v. MacCollom*, 426 U.S. 317, 320-25 (1976), the Supreme Court specifically declined to make access to trial transcripts, at public expense, an automatic right for § 2255 relief  (finding that "Congress has expressly addressed the question of furnishing transcripts at the public expense in 28 U.S.C. § 753(f)"); *accord Miller v. Smith*, 115 F.3d 1136, 1140 (4th Cir. 1997).  Moreover, Bias's allegations do not reflect that, without the transcripts, he could not timely file his § 2255 Petition.

Further, Bias argues that his prison transfers prevented him from timely filing his § 2255 petition.  ECF 139 at 3.  This argument is equally unpersuasive.  As indicated in the factual background, *supra*, Bias had little trouble communicating with this Court well before the § 2255 deadline.  He filed a request for a § 2255 packet, ECF 118, and he requested that the brandishing charge be vacated.  ECF 124-1.  Given Bias's ability to communicate with this Court, he

certainly could have timely filed a § 2255 petition.  And, his request for a § 2255 packet shows that he was aware of his filing obligations.

In my view, Bias has not shown reasonable diligence or that any extraordinary circumstances prevented him, for an entire year, from discovering "through the exercise of due diligence" the basis of his claims.  28 U.S.C. § 2255(f)(4).  Therefore, I conclude that equitable tolling does not apply here.

On June 25, 2015, Bias filed a reply in which claimed that he is entitled to equitable tolling because of "actual innocence."  With regard to such a claim, a defendant must meet a threshold which makes a viable claim "rare," according to *McQuiggin v. Perkins*, ____ U.S. ____, 133 S. Ct. 1924, 1928 (2013).  There, the Supreme Court said, *id.*

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations.  We caution, however, that tenable actual-innocence gateway pleas are rare:  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 329, 115 S. Ct. 851; *see House*, 547 U.S. at 538, 126 S. Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met).  And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence.  *Schlup*, 513 U.S. at 332, 115 St. Ct. 851.

Bias has not provided a factual basis to entitle him to equitable tolling based on actual innocence.  *Id.*  I agree with the government that the evidence against Bias was "overwhelming" and "he admitted to that evidence including his presence on videotaped recordings of the robberies."  ECF 150 at 11.

### B.   Ineffective Assistance of Counsel

Even assuming that Bias is entitled to equitable tolling, the Petition lacks merit.

Bias argues that his defense attorney was constitutionally ineffective because he failed to investigate adequately defendant's involvement as well as the firearms charges. He insists that "he had no knowledge of any firearm during any of these alleged robberies," and that he "was never physically present during any of these alleged robberies." ECF 130-1 at 2; ECF 149 at 1. According to Bias, he was merely present at the robberies as "a patron purchasing goods. . . ." ECF 149 at 2. He also complains, *id.*: "It was through through [sic] the diligent deception of Petitioner's counsel . . .to ascertain [his] acquiescence of a guilty plea." *Id.* Bias also complains that his attorney never moved to suppress evidence of the firearms. ECF 130-1 at 2, 5. And, Bias complains that his lawyer should have filed a motion for judgment of acquittal, challenging the sufficiency of the charge or the evidence as to Bias's possession of a firearm in furtherance of a crime of violence. ECF 130-1 at 5; ECF 149 at 2.

Further, Bias insists that his "counsel failed to investigate the background of the defendant's mental health issues and problems." ECF 130-1 at 3. Specifically, Bias states, *id.*:

> Had counsel done more than a cursory investigation he would have discovered his client Rico Bias, the defendant, has a long history of being diagnosed with having Bipolar Disorder and as also suffering from Schizophrenia. The defendant has been on Zoloft (an antidepressant for Bipolar Disorder, and Resperidol, a sedative for Schizophrenia) dated back to 2004. The counsel's performance was defective in not using the defendant's mental health issues as a Constitutional level of defense.

To challenge successfully a conviction or sentence under § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To succeed on a Sixth Amendment claim of ineffective

assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland*."). *See also Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399 (2012); *Laffler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688. This is known as the "performance prong," which relates to professional competence. The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*[4]

The *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In the case at bar, Bias entered into a plea agreement with the government, by which he pled guilty to two counts of a multi-count indictment. In *Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

---

[4] The Sixth Amendment guarantee to effective assistance of counsel also applies to an appeal. *See, e.g., Halbert v. Michigan*, 545 U.S. 605 (2005); *Evitts v. Lucey*, 469 U.S. 387 (1985). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in *Strickland*. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to claim of attorney error on appeal).

*Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).

In *Hill*, 474 U.S. 52, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).   In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

In *Hooper*, 845 F.2d 471, the defendant had a history of mental illness.  He pled guilty to second-degree murder.  *Id.* at 472.  However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea.  *Id.*  The Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial.  *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty.  It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time.  *Id.* at 475-76.  Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.  *Id.*

Bias complains that his attorney failed to "investigate the background of the defendant's mental health issues and problems," and seems to suggest that, if his counsel had done so, he

would have rejected the plea agreement in favor of a trial.  *See* ECF 130-1 at 3.  The claim of failure to investigate is contradicted by the record.  Magistrate Judge Gauvey ordered a medical evaluation of Bias on October 5, 2012, identifying concerns as to the defendant's history of "bipolar, manic depressive disease; intermittent explosive disorder," among other issues.  ECF 27.  Defense counsel followed up on October 10, 2012.  ECF 30.  Defense counsel also wrote to me on October 10, 2012, requesting a pre-plea criminal history report.  ECF 29.  And, Magistrate Judge Gesner ordered a medical evaluation of Bias on October 12, 2012.  ECF 42.

In addition, in the sentencing memorandum submitted by Bias's defense counsel (ECF 103), defense counsel addressed at length Bias's history of mental health issues, including that Bias attempted suicide in 2010 and has a history of bipolar disorder.  *Id.*  Counsel also submitted extensive medical records for the Court's review, consisting of more than 125 pages.  *Id.*  Thus, I am not persuaded that counsel failed to investigate Bias's mental health issues.  To the contrary, he sought to use them to Bias's advantage.

The guilty plea proceeding here is also relevant.  There is a strong presumption that a guilty plea is valid when an appropriate Rule 11 plea colloquy is conducted.  *See United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992).  Furthermore, in evaluating a post-guilty plea claim of ineffective assistance of counsel, a defendant's statements at a Rule 11 proceeding are binding on the defendant, absent "clear and convincing evidence" to the contrary.  *Fields*, 956 F.2d at 1299.  And, the fact that a plea bargain is "favorable" to a defendant and that accepting it was "a reasonable and prudent decision" is itself evidence of "the voluntary and intelligent" nature of the plea.  *Id.*

At the guilty plea proceeding, Bias was sworn, ECF 150-1 at 2, and he was advised of the consequences of taking an oath to tell the truth.  *Id.*  Bias indicated, under oath, that he was

satisfied with his lawyer's representation of him, *id.* at 8, and also answered "no" to the following question, *id.*: "Is there anything you wanted [your lawyer] to do that he failed to do?" In addition, Bias signed his plea agreement on February 28, 2013, directly below a statement that said, in part: "I am completely satisfied with the representation of my attorney." ECF 67 at 9.

As noted, Bias's plea agreement included a detailed Statement of Facts as Attachment A. ECF 67 at 10-20. Bias stipulated to the facts in Attachment A, which recounted the facts of twenty-two robberies and the repeated use of a firearm. *Id.* Bias also signed the Statement of Facts. *Id.* at 20.

At the guilty plea proceeding, the government presented a summary of the facts, incorporating Attachment A. ECF 150-1 at 46-50. Like Attachment A, the government's factual summary recounted the use of a Smith & Wesson revolver that was used in the robberies and discharged on two occasions. *Id.* at 47-48. Moreover, the prosecutor stated that, after Bias's arrest, Bias was advised of his rights and confessed. *Id.* at 49. *See also* ECF 67 at 20. And, Bias was captured on video at a Walmart Store purchasing clothes worn in the robbery of a nearby Royal Farms Store. ECF 150-1. Under oath, Bias agreed that the summary of facts was accurate, that he committed the crimes as summarized, still wanted to plead guilty, and was doing so because he was guilty, as charged. *Id.* at 50-51.

Petitioner seems to argue that his counsel rendered ineffective assistance by advising him to plead guilty to the § 924(c) charge because Petitioner is innocent. However, "[a] defendant may be convicted of a § 924(c) charge on the basis of a coconspirator's use of a gun if the use was in furtherance of the conspiracy and was reasonably foreseeable to the defendant." *United States v. Wilson*, 135 F.3d 291, 305 (4th Cir. 1998) (citing *United States v. Chorman*, 910 F.2d 102, 110-111 (4th Cir. 1990)). Similarly, Bias seems to misapprehend that, under 18 U.S.C. § 2

(aiding and abetting), he was legally responsible for the firearm used by his codefendant.   The facts, to which Bias admitted, under oath, make clear that he was legally responsible for the gun used by Smith.   It is irrelevant if the gun involved in the robberies was not in Petitioner's personal possession.

I am completely unpersuaded that counsel was deficient for failing to file "motions challenging the prosecution's case," including the attribution of the firearm to Bias.   ECF 130-1 at 2.   The record reflects that Bias and the government began plea negotiations early in the case. *See* ECF 29.   On November 9, 2012, defense counsel wrote to the court to advise that, because the parties were working towards resolution of the case by way of a guilty plea, defense counsel did not anticipate the filing of any motions.   ECF 48.   Of course, if defense counsel pursued the litigation of motions, this may have jeopardized the government's willingness at sentencing to move for a reduction in the defendant's offense level under U.S.S.G. § 3E1.1(b).

Moreover, the claim of ineffective assistance of counsel, based upon a failure to file a motion to suppress evidence or a motion for judgment of acquittal, requires the defendant to show actual prejudice by demonstrating that his "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence."   *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986).   Bias has woefully failed to meet this burden.   In short, Bias's argument fails to support his claim of ineffective assistance of counsel in respect to failure to challenge the use of a firearm.

Bias has no basis to complain about his sentence.   In connection with Bias's guilty plea, the government took the position that defendant was a career offender.   Bias reserved the right to challenge his status as a career offender under U.S.S.G. § 4B1.1.   ECF 67 ¶ 7.   If he was found to be a career offender, however, petitioner agreed that for Count One his base offense level

would be 32, with a deduction of 3 levels for acceptance of responsibility, resulting in an offense level of 29, with a criminal history category VI.  This did not include adjustments for related conduct, however.  In addition, Count Four carried a penalty of a mandatory minimum sentence of 84 months, consecutive.  The government agreed to recommend a guidelines sentence.  ECF 67 ¶ 9.  In the event Bias was not a career offender, his final offense level would remain the same, but his criminal history category would drop to a level III. *See* ECF 150-2 at 6-9.

At sentencing, for Count One, it was agreed that Bias's offense level was 31, inclusive of upward adjustments for related conduct and downward adjustments for acceptance of responsibility.  But, at sentencing, the Court found that defendant was not a career offender, and therefore he had a criminal history category of III, not VI.  *See* ECF 150-2 at 9.  As to Count One, Bias had a sentencing guideline range of 135 to 168 months of incarceration, plus 84 months, consecutive, for the firearm offense in Count Four.  Thus, Bias's total guideline sentencing range was 219 to 252 months of incarceration.  For the reasons explained at sentencing, defendant received a sentence of 185 months' imprisonment.  The defendant's sentence of 185 months' incarceration was well below the bottom of the sentencing guideline range.

## Conclusion

Bias has failed to carry his burden of showing that he is entitled to equitable tolling of the § 2255 limitations period.  Thus, Bias's Petition was untimely filed.  Alternatively, Bias has failed to establish ineffective assistance of defense counsel.

A certificate of appealability shall not issue.  An Order follows.

Date: July 8, 2015                                     _____/s/_____
                                                                      Ellen Lipton Hollander
                                                                      United States District Judge