IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
   *Plaintiff*,

v.

RICO LAMONT BIAS,
   *Defendant*.

Crim. No. ELH-12-528

**MEMORANDUM**

In a six-month period in 2012, defendant Rico Bias participated in twenty-two armed robberies of commercial establishments.  During one of the robberies, his co-defendant discharged a firearm.  And, during another robbery, the same co-defendant shot a convenience store customer in the abdomen.

Defendant pleaded guilty to two offenses in connection with the crime spree.  He is serving a total sentence of 185 months of imprisonment, with credit from the date of his arrest on June 11, 2012.  ECF 106; ECF 107.

Bias has filed numerous post-judgment motions, including two post-conviction petitions challenging aspects of his case, as well as motions for reduction of sentence.  *See*, *e.g.*, ECF 130, ECF 130-1, ECF 132, ECF 165, ECF 186, ECF 193, ECF 257.  The Court has issued several opinions.  *See* ECF 151, ECF 210, ECF 261, ECF 269.  Of relevance here, by Memorandum Opinion and Order of April 20, 2021 (ECF 269, ECF 270), the Court denied defendant's motion for compassionate release (ECF 257).  Defendant subsequently filed a "Motion For Compassionate

Release Reconsideration" (the "Motion").  ECF 274.[1]  He also submitted exhibits.  The government opposes the Motion.  ECF 278.  Mr. Bias has replied.  ECF 284.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

## I.     Factual and Procedural Summary[2]

On October 4, 2012, Bias and two others were indicted on multiple charges relating to twenty-two armed robberies committed between January and June of 2012.  ECF 22.  Bias was charged in Count One with Hobbs Act conspiracy under 18 U.S.C. § 1951, pertaining to the period between January 22, 2012 and June 11, 2012.  In Count Two, he was charged with the robbery of a Wendy's restaurant in Baltimore and two customers on June 11, 2012, in violation of 18 U.S.C. §§ 1951, 2 ("Hobbs Act Robbery").  Count Three charged Bias with conspiracy to possess firearms in furtherance of crimes of violence, *i.e.*, robbery, in violation of 18 U.S.C. §§ 924(c).  Count Four charged Bias with brandishing and discharging a firearm on June 11, 2012, in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c), 2.  Count Four expressly identified Count Two as one of two predicate crimes of violence.  And, in Count Six, Bias was charged with unlawful possession of a firearm (a Smith & Wesson revolver) by a convicted felon, in violation of 18 U.S.C. §§ 922(g).  As to all substantive offenses, Bias was also charged as an aider and abettor under 18 U.S.C. § 2.

---

[1] The docket incorrectly describes ECT 274 as a motion for compassionate release, rather than a motion for reconsideration.

[2] To the extent relevant, the Court incorporates by reference the factual and procedural background and rulings set forth in its prior opinions, docketed at ECF 151, ECF 210, ECF 261, and ECF 269.

On February 25, 2013, Bias entered a plea of guilty to conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One), and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c), 2 (Count Four). *See* ECF 63; ECF 67; ECF 68. Count Four specified two predicate crimes of violence: conspiracy to commit robbery (Count One) and Hobbs Act Robbery in Count Two, *i.e.*, the robbery of the Wendy's Restaurant and two customers on June 11, 2022. However, only one of the two predicate offenses had to qualify as a crime of violence. *See* ECF 63.

Defendant tendered his pleas of guilty pursuant to a Plea Agreement. ECF 67. A lengthy Statement of Facts was included with the Plea Agreement, to which defendant stipulated. ECF 67, ¶ 6; ECF 67 at 10-20; ECF 146 at 9. The stipulation outlined all twenty-two armed robberies committed by Bias and his co-defendants during the period from January 2012 to June 2012. In general, Bias's role was to drive the getaway car, and he sometimes scoped out the establishment before the robbery. *See*, *e.g.*, ECF 67 at 13, 20.

The Statement of Facts reflects that a firearm was brandished by Bias's co-defendant, Hatratico Smith, during the robberies. ECF 67 at 20. Moreover, Smith discharged the weapon on two occasions. ECF 67 at 10. On one of those occasions — the robbery of a Royal Farms Store on February 21, 2012 — Smith shot a customer in the abdomen. *Id.* at 10, 13-14, 20.

The Court conducted a thorough Rule 11 colloquy on February 25, 2013. ECF 146 (Transcript of Rearraignment). Among other things, defendant agreed, under oath, *id.* at 2, that he had reviewed "every part" of the Plea Agreement with his lawyer, understood it, and voluntarily agreed to it. *Id.* at 9.

Moreover, the Court reviewed with defendant the elements of both offenses to which he pleaded guilty. *Id.* at 10-11. As to Count Four, defendant was expressly advised that, to obtain a

conviction under 18 U.S.C. § 924(c), the government would have to prove the commission of the offense in Count Two of the Indictment. *Id.* at 11. In addition, defendant was told that, even if he did not "directly" commit the crime, he was charged with aiding and abetting the commission of the crimes. *Id.* Defendant indicated that he understood. *Id.*

The Court also reviewed Paragraph 10 of ECF 67. *See* ECF 146 at 19. The text provides that, at sentencing, the parties have the right to bring to the Court's attention, *inter alia*, conduct of the defendant that is the subject of counts of the Indictment that the government agreed to dismiss. *Id.*

Paragraph 11 of the Plea Agreement is titled "Waiver of Appeal." There, Bias waived many of his appellate rights. However, he reserved the right to appeal any sentence to the extent it exceeded the Guidelines range for incarceration for an offense level of 29, plus seven years.

During the Rule 11 proceeding, the government presented a factual summary. ECF 146 at 35-39. The government incorporated the factual summary contained in the Plea Agreement. *Id.* at 36. Nevertheless, the government specifically referenced the robbery of the Wendy's Restaurant on June 11, 2012. *Id.* at 36-37.

The Court asked defendant if the factual summary was accurate. *Id.* at 39. He responded, "Yes, Ma'am." *Id.* at 40. When asked if he had, in fact, committed the crimes summarized by the government, defendant again answered "Yes . . . ." *Id.*

By statute, Count One carries a maximum sentence of twenty years of incarceration. Count Four carries a maximum sentence of life imprisonment and a mandatory minimum term of seven years of imprisonment, consecutive to any other sentence. Under the Plea Agreement, the

government agreed to recommend a sentence within the advisory range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). ECF 67, ¶ 9.[3]

The Amended Presentence Report ("PSR," ECF 109) took into account all twenty-two robberies in calculating the defendant's Guidelines, to which defendant stipulated in the Plea Agreement. *See id.* ¶ 42; ECF 67 at 10-20; U.S.S.G. § 1B1.2(c). At sentencing on November 26, 2023 (ECF 105), the parties agreed that, after deductions for acceptance of responsibility, Bias had a final offense level of 31 and a Criminal History Category of III. ECF 147 (Sentencing Transcript) at 9; *see also* ECF 107 (Statement of Reasons); ECF 109, ¶¶ 207, 219.

Under the Guidelines, Count One called for a sentence ranging between 135 and 168 months of imprisonment. And, Count Four required a sentence of at least 84 months of imprisonment, consecutive. *Id.* ¶¶ 230, 234; *see also* ECF 107. Therefore, the Guidelines called for a combined, total sentence of imprisonment ranging between 219 and 252 months. *Id.* ¶ 230.

In its presentation, the government acknowledged that it was Mr. Smith who "always had the firearm . . . ." ECF 147 at 11. The prosecutor also explained that defendant was the one who would usually "scope the place out" and he was the "wheel man," who "made sure they had a vehicle to do these robberies," and he was the one "providing the transportation." *Id.* The prosecutor added, *id.* at 12: "Mr. Bias did not have – not that it matters legally, but just so the Court understands – he did not ever approach anyone with a firearm." However, the prosecutor noted that defendant "was with Smith" and, as to the shooting of the customer, defendant "was in the store" but left before the victim was shot. *Id.*

---

[3] The government initially claimed that the defendant qualified as a career offender. ECF 67, ¶ 6(a). Defendant disputed that assertion. *Id.* ¶ 6(b). He also reserved the right to challenge a career offender finding. But, at sentencing, the parties and the Court agreed that defendant did not qualify as a career offender. *See* ECF 147 (Sentencing Transcript), at 8-9.

For Count One, the government sought a sentence at the bottom of the Guidelines, *i.e.*, 135 months. And, it sought the required minimum sentence of 84 months, consecutive, for Count Four. *Id.*

The defendant addressed the Court in his own behalf. *Id.* at 18-21. He expressed remorse, apologized to the victim who was shot and who attended the sentencing, and described his efforts at rehabilitation. *Id.*[4]

The Court expressly noted that, "by comparison," Mr. Bias's role was "perhaps not as significant as that of Mr. Smith." *Id.* at 22. But, the Court also observed that the defendant "played an essential part" in the commission of very serious offenses. *Id.* Nevertheless, the Court "tried very hard to take into account the [defendant's] redeeming characteristics" as well as his "personal circumstances . . . ." *Id.* at 23.

The Court imposed a term of 101 months' incarceration for Count One and the congressionally mandated minimum sentence of 84 months, consecutive, for Count Four. Thus, Bias received a total sentence of 185 months' incarceration. ECF 106 (Judgment).[5] This sentence was well below the bottom of the Guidelines range and below the government's recommendation. *See* ECF 107 (Statement of Reasons). No appeal was filed.

Bias is now 45 years of age. He has been released to a residential reentry facility. *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by BOP Register Number 54904-037) (last accessed September 19, 2024). His projected release date is August 26, 2025. *Id.*

---

[4] The victim also spoke. ECF 147 at 13-15.

[5] In contrast, Smith received a total sentence of 300 months' incarceration. ECF 119.

As the docket reflects, defendant has vigorously pursued his post-conviction remedies. This Court has carefully considered defendant's various contentions, as reflected in earlier opinions docketed at ECF 151, ECF 210, ECF 261, and ECF 269.

This Memorandum addresses only the defendant's request for reconsideration of the Court's denial of defendant's motion for compassionate release. In the Motion, defendant lodges numerous challenges, some of which were not part of his prior motion for compassionate release.

Defendant complains that he was induced to plead guilty based on a promise of dismissal of Count Two, and therefore Count Two was not a proper predicate for Count Four, nor was it appropriate to consider it in regard to sentencing. ECF 274 at 1. He also claims that the Plea Agreement was "misleading" and the Court failed to place it "on the record in its entirety." *Id.* Further, defendant argues that he could not "exercize [sic] any form of 'control or dominion' [over the firearm]", as required by statute for a conviction, because he was never present for the commission of any of the robberies. *Id.* He also asserts: "Mere knowledge, by itself, about the robbery is not enough to support the 18 U.S.C. § 924(c) . . . convictions." *Id.* at 4.

In addition, defendant contends that the Court abused its discretion by failing to request documentation from defendant to support his medical claims. *Id.* at 3. And, he complains that he is not receiving proper medical care. *Id.* at 4. In particular, he maintains that the doctor at the prison is unlicensed and inept. *Id.*

Defendant also included evidence of the educational and vocational courses he completed while in prison. ECF 274-3. It is an impressive list, for which the Court takes notice and commends Mr. Bias.

## II. Discussion

In his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 257), defendant claimed that his asthma renders him particularly vulnerable to COVID-19. *Id.* at 3. In my Memorandum Opinion addressing that motion (ECF 269), I recognized that, according to the Centers for Disease Control ("CDC"), asthma is "a condition that 'might' increase the risk of complications due to COVID-19. *Id.* at 15. However, I noted that Bias did not submit any medical records that established the severity of his medical condition. *Id.* Therefore, I concluded that defendant failed to demonstrate an extraordinary and compelling reason for compassionate release. *Id.* at 16. In any event, I concluded that, in light of the sentencing factors under 18 U.S.C. § 3553(a), compassionate release was not warranted.

In the Motion, defendant does not supplement the record with any medical records pertaining to his medical condition. Indeed, he does not assert that his medical condition warrants release. Instead, he complains that the Court never "requested further documentation" and ruled based on "an incomplete record . . . ." ECF 274 at 3. However, it is not the Court's responsibility to obtain medical documentation for a litigant.

Bias also disputes the Court's suggestions that he has failed to accept responsibility for his conduct. *Id.* I pause to note that as recently as September 10, 2024, defendant wrote to the Court. ECF 346. There, he claimed that his sentence was not "just" and that it was the product of "vengeance." *Id.* at 1. He also contends, without any factual basis, that the government breached the Plea Agreement. *Id.* at 2. He points to Paragraph 10 of the Plea Agreement, which expressly permitted both sides to present, "at the time of sentencing," any "relevant information" about defendant, including as to "conduct that is the subject of the counts of the Indictment" that the government agreed to dismiss at "sentencing. *See* ECF 67, ¶ 10. As best I can determine,

defendant seems to believe that this paragraph precluded the government from addressing conduct that occurred prior to sentencing, such as the subject of Count Two.  *See* ECF 346 at 2.

Defendant is mistaken.  The language of Paragraph 10 could not be more clear.  It did not bar the government from presenting a review of the robberies.

Moreover, defendant asserts in the Motion that he is not receiving proper medical care, and that the doctor at the prison, Dr. Ahmed, is unlicensed.  ECF 274 at 4.  However, he provides no information as to the medical condition that he claims required treatment.  Nor does he provide particulars as to how his treatment has been deficient.

In addition, defendant insists that, if defendant were prosecuted today, the government could not establish aiding and abetting as to the § 924(c) offense.  *Id.*  In his Reply (ECF 284), defendant elaborates.  He seems to challenge the validity of his § 924(c) conviction (Count Four).  In particular, he points out that the conspiracy offense (Count One) cannot support a § 924(c) conviction, and he never pleaded guilty to Count Two, the other predicate, which charged the robbery of the Wendy's Restaurant and two customers.  Therefore, defendant contends that his conviction for the § 924(c) offense in Count Four is unconstitutional.  *Id.* at 3.

In its Opposition (ECF 278), the government analogizes to the federal rules of civil procedure for the proposition that a motion for reconsideration is appropriate under limited circumstances:  1) to address an intervening change in controlling law; 2) to account for new evidence that was not previously available; or 3) to correct a clear error of law or prevent manifest injustice.  *Id.* at 2 (citing cases).  The government argues that the Motion, even assuming it was timely filed, does not satisfy any of the criteria for relief.  *Id.*

With respect to Doctor Ahmed, the Court is not entirely clear as to defendant's contention. But, the matter was not part of the earlier motion for compassionate release. Therefore, it is not properly the basis for a motion to reconsider.

As noted, much of defendant's Motion involves an attack on his § 924(c) conviction. Bias is correct that, under *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), the offense of conspiracy to commit robbery does not constitute a crime of violence for purposes of § 924(c). Therefore, it cannot serve as a qualifying predicate. But, as noted, Count Two is also identified in Count Four as a predicate for the § 924(c) offense. And, without question, the Hobbs Act Robbery charged in Count Two is a qualifying predicate.

Moreover, defendant's challenge to the § 924(c) offense does not provide a basis for compassionate release. "[A] compassionate release motion cannot be used to challenge the validity of a defendant's conviction or sentencing." *United States v. Ferguson*, 55 F.4th 262, 272 (4th Cir. 2022), *cert. denied*, 144 S. Ct. 1007 (2024). Rather, 28 U.S.C. § 2255 "is the exclusive method of collaterally attacking a federal conviction or sentence" and "a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *Ferguson*, 55 F.4th at 270. Regardless of "how an inmate characterizes his request for relief, the substance of that request controls." *Id.* So, a motion that attacks the constitutionality of a conviction is "subject to the rules set forth in § 2255." *Id.* Requiring compliance with "the correct process . . . is not empty formalism." *United States v. Sanchez*, 891 F.3d 535, 539 (4th Cir. 2018).

Defendant has twice moved for relief under § 2255. This Court rejected both motions and, each time, the Fourth Circuit agreed. *See* ECF 170, ECF 277. Therefore, to the extent that

defendant uses the Motion to challenge the validity or constitutionality of his conviction under 18 U.S.C. § 924(c), it is a collateral attack that is not properly before me.

Even if Bias's contention as to the validity of the gun conviction were properly before the Court, it would fail. The premise of defendant's argument is that he did not plead guilty to Count Two; Count Two was dismissed; he was not convicted of Count Two; and thus it is not a proper predicate for Count Four. This issue was considered and rejected in the Memorandum Opinion and Order of October 22, 2020. ECF 261; ECF 262.

Count Four of the Indictment, charging the § 924(c) offense, expressly set forth Count Two as a predicate crime of violence. The Plea Agreement states, in part, ECF 67, ¶ 2, that the government would prove that defendant "committed a crime of violence, interference with commerce by robbery, *as charged in Count Two of the Indictment* . . . ." (Emphasis added). The Indictment and Plea Agreement make it plain that Count Two was integral to the plea to Count Four; the Court's comprehensive Rule 11 colloquy left no doubt; and defendant understood that Count Two was an element of Count Four. *See* ECF 146 at 10.

Hobbs Act robbery – charged in Count Two – unquestionably qualifies as a crime of violence under the force clause of 18 U.S.C. § 924(c). *See United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 639 (2019) and *Stokes v. United States*, 140 S. Ct. 640 (2019).

"Robbery" is defined as the taking of personal property from another "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). A crime of violence is defined in 18 U.S.C. § 924(c)(3) as "an offense that is a felony" and "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk

that physical force against the person or property of another may be used in the course of committing the offense." Subsection (A) of 18 U.S.C. § 924(c)(3) is commonly referred to as the "force clause" or "elements clause," while subsection (B) is referred to as the "residual clause."

In *Mathis*, 932 F.3d at 266, the Fourth Circuit determined that Hobbs Act Robbery "categorically" qualifies as a crime of violence under the force clause in 18 U.S.C. § 924(c)(3)(A). The *Mathis* Court relied on its prior decision in *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), and concluded that Hobbs Act Robbery requires the use, attempted use, or threat of physical force, even when the offense only involves "fear of injury," because that term is synonymous with "intimidation," which necessarily "involves the threat to use [physical] force." *Mathis*, 932 F.3d at 266.

Under federal law, a person who uses or carries a firearm "during and in relation to any crime of violence" or who "possesses a firearm" in "furtherance of any such crime" is subject to conviction for the underlying crime of violence as well as for the firearm offense. *United States v. Taylor*, 978 F.3d 73, 76 (4th Cir. 2020); *see* 18 U.S.C. § 924(c)(1)(A). Clearly, the Hobbs Act Robbery charged in Count Two of the Indictment, and incorporated into Count Four, qualifies as a crime of violence under the force clause.

It is also of no moment that it was Smith who brandished or used the gun, rather than Bias. Defendant was charged under 18 U.S.C. § 2 as an aider or abettor. And, there is no question that he knew Smith was using a gun.

The case of *United States v. Gillespie*, 27 F.4th 934 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 164 (2022), is informative. There, following a trial, the defendant was convicted, *inter alia*, under 18 U.S.C. § 924(c), based on the conduct of a codefendant and the *Pinkerton* theory of liability. *See Pinkerton v. United States*, 328 U.S. 640 (1946). The Fourth Circuit explained,

*Gillespie*, 27 F.4th at 942: "[A] defendant cannot be convicted under § 924(c) for personally carrying a gun during a Hobbs Act *conspiracy*. But if a conspirator commits a Hobbs Act *robbery* while carrying a gun, the conspirator has violated § 924(c). And under *Pinkerton*, their co-conspirators can be held vicariously liable for the § 924(c) violation so long as the robbery and use of the firearm were reasonably foreseeable to the defendant and in furtherance of a conspiracy. The defendant would still be liable even if, unlike Gillespie, the defendant was not present at the robbery and never touched a gun." (Emphasis in *Gillespie*).

Here, in the Statement of Facts in support of Bias's guilty plea (ECF 67 at 10-20), signed by defendant, he agreed that he, Smith, and codefendant Monzell Lee conspired to interfere with commerce by robbery "through the use of a firearm, specifically a silver in color Smith & Wesson revolver, serial number A4D1547." *Id.* at 10. Defendant was generally the driver of the get-away car. He also assisted by scoping out some of the targeted establishments. For example, he entered a Pizza Boli's on February 14, 2012, to see if there were customers in the restaurant. *Id.* at 13. He entered the Burger King on February 21, 2012, prior to Smith, "to ensure the robbery could occur." *Id.* On the same date, he entered the Royal Farm's store with Smith, but left the store prior to the robbery and shooting of the customer. *Id.* at 13-14. And, defendant expressly agreed that he "did in fact aid and abet in the brandishing of the firearm as described in Count Four." *Id.* at 20.

The Court was well aware that defendant did not personally carry the gun or discharge it. However, that does not relieve defendant of legal responsibility for Smith's use of the weapon.

In sum, the case involved a staggering twenty-two armed robberies committed in a period of about six months. During one of the robberies, a store customer was shot in the abdomen. Because defendant did not personally wield the gun, his sentence was considerably less than the sentence imposed upon the codefendant, who wielded the gun and fired it.


### III. Conclusion

For the reasons set forth above, the Motion is DENIED.[6]  An Order follows.

Date:  September 20, 2024                 /s/
                                          Ellen Lipton Hollander
                                          United States District Judge

---

[6] Defendant is, of course, entitled to file another motion for compassionate release if there is a basis to do so.